IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SALVADOR GOMEZ, )
 )
         Plaintiff, )
 )
    v. ) No. 08 C 3625
 )
CAR-MIN CONSTRUCTION CO., )
 )
         Defendant. )

## OPINION AND ORDER

Plaintiff Salvador Gomez was employed as a construction laborer for defendant Car-Min Construction Co. Plaintiff alleges that, in violation of Title VII and 42 U.S.C. § 1981, his immediate supervisor subjected him to a hostile environment because plaintiff is Hispanic. Plaintiff also alleges that he was discharged because he is Hispanic. Defendant contends it is not liable for any harassment that may have occurred because it did not know of the alleged harassment and the supervisor did not have the type of authority that would make the supervisor's conduct directly attributable to defendant. Defendant contends plaintiff was not discharged, but resigned. Even if plaintiff was discharged, defendant contends evidence does not support

that the discharge was motivated by discrimination based on plaintiff's race or national origin. Presently pending is defendant's motion for summary judgment.[1]

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Crawford v. Metropolitan Gov't of Nashville & Davidson County, Tenn., 129 S. Ct. 846, 849 (2009); Stokes v. Board of Educ. of City of Chicago, 599 F.3d 617, 619 (7th Cir. 2010); Knight v. Wiseman, 590 F.3d 458, 462 (7th Cir. 2009). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Delta Consulting Group, Inc. v. R. Randle Constr., Inc., 554 F.3d 1133, 1137 (7th Cir. 2009); Hicks v. Midwest Transit, Inc., 500 F.3d 647, 651 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); National Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008); Hicks, 500 F.3d at 651. The movant need not provide affidavits or deposition testimony

---

[1] Plaintiff's motion to clarify will be granted and the contentions therein have been considered.

showing the nonexistence of such essential elements. <u>Celotex</u>, 477 U.S. at 324; <u>Freundt v. Allied Tube & Conduit Corp.</u>, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); <u>O'Brien v. Encotech Constr.</u>, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See <u>Lorillard Tobacco Co. v. A & E Oil, Inc.</u>, 503 F.3d 588, 594-95 (7th Cir. 2007); <u>Yasak v. Retirement Bd. of Policemen's Annuity & Benefit Fund of Chicago</u>, 357 F.3d 677, 679 (7th Cir. 2004); <u>NLFC, Inc. v. Devcom Mid-America, Inc.</u>, 45 F.3d 231, 236 (7th Cir. 1995); <u>Covalt v. Carey Canada, Inc.</u>, 950 F.2d 481, 485 (7th Cir. 1991); <u>Collins v. Associated Pathologists, Ltd.</u>, 844 F.2d 473, 476-77 (7th Cir. 1988); <u>Freundt</u>, 2007 WL 4219417 at *2. As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Logan v. Commercial Union Ins. Co.</u>, 96 F.3d 971, 978 (7th Cir. 1996) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing

> that there is a genuine issue for trial."
> Fed. R. Civ. P. 56(e). "The nonmovant must do
> more, however, than demonstrate some factual
> disagreement between the parties; the issue
> must be 'material.'" Logan, 96 F.3d at 978.
> "Irrelevant or unnecessary facts do not preclude
> summary judgment even when they are in dispute."
> Id. (citation omitted). In determining whether
> the nonmovant has identified a "material" issue
> of fact for trial, we are guided by the
> applicable substantive law; "[o]nly disputes
> that could affect the outcome of the suit under
> governing law will properly preclude the entry of
> summary judgment." McGinn v. Burlington Northern
> R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
> (citation omitted). Furthermore, a factual
> dispute is "genuine" for summary judgment
> purposes only when there is "sufficient evidence
> favoring the nonmoving party for a jury to return
> a verdict for that party." Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
> 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
> doubt" regarding the existence of a genuine fact
> issue is not enough to stave off summary
> judgment, and "the nonmovant fails to demonstrate
> a genuine issue for trial 'where the record taken
> as a whole could not lead a rational trier of
> fact to find for the non-moving party . . . .'"
> Logan, 96 F.3d at 978 (quoting Matsushita Elec.
> Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
> 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986)).

Outlaw, 259 F.3d at 837.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of ruling on defendant's motion for summary judgment are as follows. Plaintiff is Hispanic and was born in Mexico. In April 1999, he began working as a laborer for defendant, a construction company that uses only union employees.

Defendant is owned by Vincent Carravetta, who is the company's President and has the authority to hire, discipline, and discharge employees. As Superintendent, Robert Coop manages construction in the field and was plaintiff's immediate supervisor. Coop directed the work of employees, including plaintiff. This included assigning specific tasks to employees as well as assigning them to specific job sites. Coop had the authority to hire employees for job sites by requesting that the union hall send over additional employees. Coop issued verbal warnings to employees and had the authority to send home employees who were late for work.[2] Coop did not have the authority to discharge employees. He could recommend that employees be discharged and Carravetta would often follow the recommendation, particularly when based on conduct that Carravetta had not personally witnessed. Still, the final decision on discharge was made by Carravetta. Although Coop did not have the actual authority to terminate employees, a number of employees perceived him as having such authority.

While plaintiff was employed, Coop constantly made derogatory references to plaintiff's nationality, such as

---

[2]Carravetta testified that Coop had the authority to "discipline" employees, but there is no evidence that this consisted of anything beyond sending home late employees and giving verbal warnings.

"fucking Mexican," "dumb-ass Mexican," "stupid Mexican," "lazy-ass-fucking Mexican," and "greaseback." A number of other employees witnessed Coop making such statements. Carravetta was aware Coop directed such comments at plaintiff.[3]

On August 5, 2004, plaintiff and another laborer, Anton Heft, had a dispute regarding use of a wheelbarrow. Ultimately, plaintiff controlled the wheelbarrow. The dispute did not become physical. Heft is Coop's stepson. Coop was not present at the job site during the "wheelbarrow incident." That evening, plaintiff and Coop had a telephone conversation that plaintiff recorded.

A transcript of this taped conversation with Coop is in the present record as is a transcript of a subsequent taped conversation with Carravetta. The tapes did not, in a discernible manner, pick up every word spoken. In the conversation with Coop, all the inaudible passages are Coop's words. In the conversation with Carravetta, all the inaudible passages except one are plaintiff speaking. Also, the one

---

[3]Plaintiff testified that Carravetta would turn and walk away when Coop made such statements. Also, the fact that the statements were frequent and witnessed by other employees supports the inference that Carravetta, who visited construction sites, was aware of Coop's conduct. While the finder of fact could find otherwise based on Carravetta's testimony and the fact Gomez did not, prior to his discharge, report the harassment to Carravetta, on summary judgment this genuine factual dispute must be resolved in plaintiff's favor.

conversation with Coop that was recorded was not taped from the very beginning and there were other calls between the two that night that were not recorded. In an apparent attempt to put plaintiff in a bad light, defendant makes repeated reference to the tapes being in violation of Illinois law in that Coop and Carravetta were not informed each one's respective conversation was being recorded. As defendant concedes, however, recordings made in this manner are admissible in federal proceedings, at least as to federal claims which is all this case involves. See Fenje v. Feld, 301 F. Supp. 2d 781, 816-17 (N.D. Ill. 2003), aff'd, 398 F.3d 620 (7th Cir. 2005); Manning v. Buchan, 357 F. Supp. 2d 1036, 1057-58 (N.D. Ill. 2004). No negative inference will be drawn from the circumstances of the recordings. Audio copies of the tapes have not been submitted by either party. Plaintiff does not contend the recordings themselves are inadmissible, but objects to relying on the transcripts because they were not previously disclosed and no foundation is provided. Plaintiff, however, also cites to the transcripts in support of his own factual statement and he does not point to any inaccuracy in the transcriptions. In response to summary judgment, plaintiff had a sufficient opportunity to create his own transcription and/or identify any inaccuracies. The transcripts will be considered accurate. Cf. Balogun v. Ashcroft, 374 F.3d

492, 506 n.14 (7th Cir. 2004); <u>Fenje</u>, 301 F. Supp. 2d at 815. Because the transcripts contain inaudible portions and the August 5 conversations with Coop were not fully recorded, plaintiff's subsequent descriptions of his conversation with Coop cannot be discredited solely because particular statements are not heard on tape or included in the transcript that has been provided.

Parts of the recorded telephone conversation with Coop were as follows:

> COOP: You're arguing with the wrong man (inaudible).
>
> GOMEZ: You know, I'm not arguing with you.
>
> COOP: Did you go to your union" Salino, did you go to your union?
>
> GOMEZ: No.
>
> COOP: (Inaudible). I'm telling you (inaudible). (Inaudible) the union personally. I've been in the fucking union for 10 years (inaudible).
>
> GOMEZ: No.
>
> COOP: (inaudible). If I did (inaudible). You ain't even half as good as Martin is. You don't even have (inaudible). You're not half the laborer as fucking Manny. (Inaudible). I'm tired of teaching you people how to do this shit. Do you understand me? You fuckers have no respect. You disrespect all of us (inaudible).
>
> GOMEZ: Yeah but you don't have to treat me like that, you know.
>
> COOP: (Inaudible). It's done. You're fired.

GOMEZ: Yeah but you know, why you treat me like that?

COOP: You're done.

GOMEZ: I never--no make mistake.

COOP: You (inaudible) don't understand anything. (Inaudible). Why you quitters gotta treat me like that, Sal?

\* \* \*

GOMEZ: All this coming out because--all this coming out because your son. All because your son. You know, you treat him like your baby.

COOP: (Inaudible). You're fucking done.

GOMEZ: Yeah. I know, like you say, you can't keep anybody, you know. You can't keep anybody because--

COOP: (Inaudible).

GOMEZ: Yeah, but you do not own the company. You know, you just run the show. You know what I mean.

COOP: (Inaudible) the company.

GOMEZ: Yeah. But you--

COOP: (Inaudible).

GOMEZ: Are you the owner?

COOP: Huh?

GOMEZ: Are you the owner of the company?

COOP: Do you want to see me (inaudible)?

GOMEZ: Yeah but are you the owner?

COOP: (Inaudible).

GOMEZ: Are you the owner?

>           COOP: You're fired. Don't come in tomorrow.
>
>           GOMEZ: OK, I'll just go and talk to Vince--you
>           know what happened, you know--you know--
>           straighten all of this out.
>
>           [end of telephone conversation]

Def. Exh. M 4-5, 7-8.

On defendant's summary judgment motion, this conversation must be construed as Coop acting as if he had the authority to discharge plaintiff. Coop's use of "you people" is unclear as to the group of people he is referring to.[4] However, in the context of the telephone conversation and in light of Coop's prior derogatory references to plaintiff's Mexican heritage, one reasonable inference is that Coop was referring to plaintiff being Hispanic or, more specifically, Mexican. While the statements and prior conduct are not conclusive, it is a reasonable inference that plaintiff's nationality/race was a motivation in Coop's decision to discharge plaintiff, cf. Darchak v. City of Chicago Bd. of Educ., 580 F.3d 622, 631-33

---

[4]Defendant contends it should not be construed as a reference to Hispanics or Mexicans because just before this statement, Coop says plaintiff is not half as good as Martin and Manny, who are also Hispanic/Mexican. However, the prior reference to other Hispanics would support that "you people" is a reference to Hispanics. Such an inference is not altered by the fact that Coop was also saying plaintiff was even worse than (or not as good as) other Hispanic employees.

(7th Cir. 2009), a decision that was subsequently adopted or upheld by Carravetta.

The day after the telephone conversation with Coop, plaintiff met with Carravetta. Plaintiff recorded their conversation. Parts of the recorded conversation were as follows:

> GOMEZ: . . . I didn't even want to tell Bob the story, but, you know, (inaudible) gonna go to the human rights or something complain about it (inaudible).
>
> CARRAVETTA: You're going to what?
>
> GOMEZ: (Inaudible) to, you know, the human rights (inaudible) complain.
>
> CARRAVETTA: For what?
>
> GOMEZ: You know, the way he treat people, the way he treat people, ya know?
>
> CARRAVETTA: I would suggest you don't do that because they're going to come after me and then I'm going to come after you.
>
> * * *
>
> GOMEZ: I want to come back because (inaudible) the company. I work it out. (Inaudible) don't speak English, you know nothing, you're just working.
>
> CARRAVETTA: All right. You realize that if you say you're going to talk to whatever, I don't know what human rights is. Any trouble you cause, you're causing for me, and I've never caused any trouble for you, so that changes my whole opinion of you. And you have the choice to work or not work and you're quitting; that's fine with me.
>
> GOMEZ: I'm not quitting. He fire me.

CARRAVETTA: But--well, that's not what he's telling me.

GOMEZ: He said I got no more job.

CARRAVETTA: You just walked in here and said I've had enough. I'm not going to take it anymore. You quit.

GOMEZ: (Inaudible).

CARRAVETTA: So if you're going to play games with me.

GOMEZ: (Inaudible).

* * *

GOMEZ: No. No. But he said--I--said, "Why you fire me?" "Because I have the power to fire anybody and to hire anybody."

CARRAVETTA: Sal, you just walked in here and said, "I've had enough. I'm handling [sic] the keys." What the hell does that mean?

GOMEZ: (Inaudible).

CARRAVETTA: You know, Sal, the story is changing every time you open your mouth. . . . Business is slow. It sucks. What do you want me to do? You always have a choice to go to work somewhere else, and I respect that. So, have a little respect for me. All right.

GOMEZ: (Inaudible).

CARRAVETTA: Hey. You know what? You come in here and give me this kind of attitude, I don't need to hear this. . . . I respect the fact that you can't deal with Bob anymore, and you just can't take it because he's a hard person to deal with, but if you think that somehow you're going to pressure me into one situation or another, that ain't going to happen.

GOMEZ: (Inaudible).

CARRAVETTA: All right.

> GOMEZ: So, I'm going to get my check today, Boss? I got 3 hours overtime, Monday.
>
> CARRAVETTA: You know, today is Friday, you got a whole week (inaudible).
>
> GOMEZ: Today is Friday. I'm not working today.
>
> CARRAVETTA: And where were you out at that job all week 3 hours overtime?
>
> GOMEZ: Thank you, sir. Bye.

Def. Exh. N 2-3, 4-8.

The recorded conversation with Coop supports that Coop fired plaintiff. Plaintiff then goes to Carravetta to discuss the matter. The recorded portions of the conversation between Carravetta and plaintiff are ambiguous as to whether Carravetta was willing to continue employing plaintiff if plaintiff so desired or was reaffirming Coop's decision that plaintiff be discharged. The tape is particularly ambiguous in that a number of plaintiff's statements during a key part of the conversation were inaudible. On defendant's summary judgment motion, the ambiguities must be resolved in plaintiff's favor. It must be taken as true that plaintiff was discharged, not that plaintiff quit. Since evidence supports that Carravetta upheld a discharge

that was based on a discriminatory animus, the discriminatory discharge claim will not be dismissed.[5]

As to the hostile work environment claim, the first question is whether Coop had the type of supervisory authority that would make defendant directly liable for Coop's harassment. To impose direct liability, Coop could "not simply [be] a person who possesses authority to oversee the plaintiff's job performance, but [must be] a person with the power to directly affect the terms and conditions of the plaintiff's employment. . . . [This] means generally a person with 'the authority to hire, fire, promote, demote, discipline or transfer . . . .'" Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 848 (7th Cir. 2008) (quoting Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 506 (7th Cir. 2004)).

It is undisputed that Coop oversaw plaintiff's job performance. On summary judgment, it must also be assumed that

---

[5]There is no contention by defendant that there can be no liability because Carravetta, as the final decisionmaker, had no discriminatory animus. During his conversation with Carravetta, plaintiff's references to making a human rights complaint should have put Carravetta on notice that plaintiff was claiming Coop's decision was based, at least in part, on a discriminatory animus. In any event, since Carravetta upheld the dismissal based on Coop's initial decision or recommendation, Coop's animus may presently be attributed to defendant. See Staub v. Proctor Hosp., 560 F.3d 647, 656-57 (7th Cir. 2009), cert. granted, 130 S. Ct. ___, 2010 WL 1525785 (April 19, 2010); Hoffman v. MCA, Inc., 144 F.3d 1117, 1121-22 (7th Cir. 1998); Denson v. Northeast Ill. Reg'l Commuter R.R. Corp., 2002 WL 15710 *10 (N.D. Ill. Jan. 4, 2002). Defendant does not contend otherwise.

Coop had the authority to hire people from the union hall, he could assign people to job sites, and he could impose the discipline of sending a person home for the day when late. Coop's authority to hire as well as his authority to impose discipline of an unpaid work day gave him authority to directly affect terms and conditions of employment. That gives him sufficient authority to make defendant directly liable for any hostile environment that he creates. Seventh Circuit case law only requires that there be authority over at least some terms and conditions of employment; it does not matter that Coop did not also have the authority to discharge employees, only to recommend a discharge. Since defendant can be directly liable for harassment of plaintiff, it is unnecessary to also determine if evidence supports that defendant was negligent for failing to prevent harassment.

Defendant also contends that the hostile environment claim should be limited to the time period that falls within the applicable statutes of limitations, which is no earlier than October 21, 2003 for the Title VII claim and no earlier than June 25, 2004 for the § 1981 claim. Plaintiff contends there is a continuing violation and, therefore, he can obtain damages for conduct earlier than those dates. Defendant contends a continuing violation cannot exist for two reasons. First, citing

Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999) (quoting Galloway v. General Motors Serv. Parts Operation, 78 F.3d 1164, 1166 (7th Cir. 1996)), it contends that a continuing violation theory cannot be relied upon if the pattern of harassment was already evident prior to the beginning of the limitation period. Subsequent to the Seventh Circuit holdings, however, the Supreme Court reached a contrary conclusion. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117-18 (2002). Defendant's other contention is that there cannot be a continuing violation since plaintiff was laid off from November 18, 2003 through June 29, 2004. Morgan, 536 U.S. at 118, addresses this type of situation and holds there can still be one continuing violation as long as the two periods during which harassment accrued are sufficiently related to constitute parts of a whole. Since defendant points to no adequate reason, factual or legal, for not applying a continuing violation theory, no portion of plaintiff's hostile environment claim will be dismissed.

This case will be referred to the assigned magistrate judge to conduct a settlement conference. If the parties do not settle, a short date will be set for submission of a final pretrial order.

IT IS THEREFORE ORDERED that plaintiff's motion to clarify [83] is granted. Defendant's motion for summary judgment [56] is denied. This case is to be referred to the assigned magistrate judge to conduct a settlement conference. A status hearing before Judge Hart is set for July 22, 2010 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: MAY 14 , 2010